**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY PIPITONE, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONICS FOR IMAGING, INC., GUY GECHT, and MARC OLIN,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anthony Pipitone ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Electronics For Imaging, Inc. ("Electronics For Imaging" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial

1

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Electronics For Imaging from February 22, 2017 through August 3, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business within this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Electronics For Imaging provides industrial format display graphics, label and packaging, textile, and ceramic tile decoration digital inkjet printers worldwide. The Company is incorporated in Delaware and maintains an office at 7 Campus Drive, 1st Floor, Parsippany, New Jersey. The Company's securities were traded on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "EFII."

8. Defendant Guy Gecht ("Gecht") has been the Company's Chief Executive Officer throughout the Class Period.

9. Defendant Marc Olin ("Olin") has been the Company's Chief Financial Officer throughout the Class Period.

10. Defendants Gecht and Olin are sometimes referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

15. On February 22, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 ("2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Gecht and Olin. The 2016 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Gecht and Olin attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

16. The 2016 10-K stated the following with regards revenue recognition:

> **Revenue recognition**. Significant management judgments and estimates must be made and used in connection with the revenue recognized in any accounting

period. Please refer to Note 1—The Company and its Significant Accounting Policies of the Notes to Consolidated Financial Statements for a more thorough and complete description of our revenue recognition accounting policy. For purposes of evaluating and understanding the judgments required, our revenue recognition policy is summarized below.

Product revenue includes hardware (industrial digital inkjet printers including components placed under maintenance agreements, ink required for industrial digital inkjet printers, design-licensed solutions including upgrades, and DFEs), software licensing and development, and royalties. Service revenue includes software license maintenance agreements, industrial digital inkjet printer maintenance and service, customer support, training, and consulting. The timing of revenue recognition for each of these categories is discussed below.

We recognize revenue on the sale of printers, ink, and DFEs in accordance with the provisions of SEC Staff Accounting Bulletin ("SAB") 104, Revenue Recognition, and when applicable, ASC 605-25, Revenue Recognition—Multiple-Element Arrangements. We recognize revenue when persuasive evidence of an arrangement exists, delivery has occurred, the fee is fixed or determinable, and collection is reasonably assured. Products generally must be shipped against written purchase orders. We use either a binding purchase order or signed contract as evidence of an arrangement. Sales to some of the leading printer manufacturers are evidenced by a master agreement governing the relationship together with a binding purchase order. Sales to our resellers are also evidenced by binding purchase orders or signed contracts and do not generally contain rights of return or price protection.

For multiple element arrangements, we allocate revenue to the software deliverables and the non-software deliverables as a group based on the relative selling prices of all of the deliverables in the arrangement. For non-software deliverables, we allocate the arrangement consideration based on the relative selling price of the deliverables using best estimate of the sales price ("BESP"). For software deliverables (including post-contract customer support, professional services, hosting, and training), we generally use vendor-specific objective evidence of the fair value of the sales price ("VSOE"), when available. The selling price for each element is based upon the following hierarchy: VSOE if available, third party evidence ("TPE") if VSOE is not available, or BESP if neither VSOE nor TPE are available.

We have established our ability to produce estimates sufficiently dependable to require adoption of the percentage of completion method with respect to certain fixed price contracts where we provide information technology system development and implementation services. Revenue on such contracts is recognized over the contract term based on the percentage of development and implementation services that are provided during the period compared with the total estimated development and implementation services to be provided over the

entire contract. These services require that we perform significant, extensive, and complex design, development, modification, or implementation activities of our customers' systems. Performance will often extend over long periods, and our right to receive future payment depends on our future performance in accordance with these agreements.

17. The 2016 10-K stated the following regarding the Company's disclosure controls and procedures:

(a) Evaluation of Disclosure Controls and Procedures

We maintain "disclosure controls and procedures," as this term is defined in Rule 13a-15(e) and 15d-15(e) under the Exchange Act, that are designed to provide reasonable assurance that information required to be disclosed by us in reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in SEC rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure. Our management, including the Chief Executive Officer and Chief Financial Officer, is engaged in a comprehensive effort to review, evaluate, and improve our controls; however, management does not expect that our disclosure controls will prevent all errors and all fraud. A control system, no matter how well designed and operated, can provide only reasonable, not absolute, assurance that the control system's objectives are met. Additionally, in designing disclosure controls and procedures, our management necessarily was required to apply its judgment in evaluating the cost-benefit relationship of possible disclosure controls and procedures. The design of any disclosure controls and procedures is also based in part on certain assumptions about the likelihood of future events, and there can be no assurance that any design will succeed in achieving its stated goals under all potential future conditions.

***Based on their evaluation as of the end of the period covered by this Annual Report on Form 10-K, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective to provide reasonable assurance as of December 31, 2016.***

(Emphasis added).

18. The 2016 10-K stated the following regarding the Company's internal control over financial reporting:

(b) Management's Report on Internal Control over Financial Reporting

6

>Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) of the Exchange Act. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.
>
>Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2016. In making this assessment, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control—Integrated Framework (2013). ***Based on our assessment using those criteria, we concluded that our internal control over financial reporting was effective as of December 31, 2016.***
>
>Our management has excluded the internal control over financial reporting at Rialco and Optitex from its assessment of internal control over financial reporting as of December 31, 2016 because they were acquired in purchase business combinations during 2016. Rialco and Optitex represent approximately 4.4% and 2.0% of the total consolidated assets and total consolidated revenue, respectively, of the Company as of and for the year ended December 31, 2016.
>
>Deloitte & Touche LLP, an independent registered public accounting firm, has audited the effectiveness of our internal control over financial reporting as of December 31, 2016, as stated in their report included in this Annual Report on Form 10-K.

(Emphasis added).

19. On May 2, 2017, the Company filed a Form 10-Q for the quarterly period ended March 31, 2017 ("Q1 2017 10-Q") with the SEC, which provided the Company's annual financial results and position. The Q1 2017 10-Q was signed by Defendants Gecht and Olin. The Q1 2017 10-Q also contained signed SOX certifications by Defendants Gecht and Olin attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20. The Q1 2017 10-Q stated the following with regards revenue recognition:

**Revenue Recognition.** ASU 2014-09, Revenue from Contracts with Customers, issued in May 2014, and ASU 2016-10, Revenue from Contracts with Customers:

7

> Identifying Performance Obligations and Licensing, and subsequent amendments, enhances the comparability of revenue recognition practices across entities, industries, jurisdictions, and capital markets. The principles-based guidance provides a framework for addressing revenue recognition issues comprehensively. The standard requires that revenue be recognized in an amount that reflects the consideration that the entity expects to be entitled in exchange for goods or services, which are referred to as performance obligations.
>
> The guidance requires comprehensive annual and interim disclosures regarding the nature, amount, timing, and uncertainty of recognized revenue. Qualitative and quantitative disclosures will be required regarding:
>
> - contracts with customers, including revenue and impairments recognized, disaggregation, and information about contract balances and performance obligations,
>
> - significant judgments and changes in judgments required to determine the transaction price, amounts allocated to performance obligations, and the timing for recognizing revenue resulting from the satisfaction of performance obligations, and
>
> - assets recognized from the costs to obtain or fulfill a contract.
>
> ASU 2014-09 will be effective in the first quarter of 2018. Two adoption methods are allowed under ASU 2014-09. Under the full retrospective method, the revised guidance is applied to all contracts in all reporting periods presented in the financial statements, subject to certain allowable exceptions. Retained earnings is adjusted for the cumulative effect of the change as of January 1, 2016. Under the modified retrospective method, the revised guidance is applied to all contracts existing as of January 1, 2018, with an adjustment to beginning retained earnings for the cumulative effect of the change and providing additional disclosures comparing results to previous guidance. We are evaluating the impact of each transition method on our financial statements and related disclosures.
> Upon initial evaluation, we believe the key changes in the guidance that impact our revenue recognition relate to the allocation of contract revenue between various services and software licenses, and the timing of when those revenues are recognized. The requirement to defer incremental contract acquisition costs and recognize them over the contract period or expected customer life will result in the recognition of a deferred charge on our balance sheet. We are currently assessing the impact of these requirements on our consolidated financial statements upon adoption.

21.     The statements referenced in ¶¶ 15-20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts

8

pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was improperly recognizing revenue; (2) the Company's disclosure controls and procedures were not effective; (3) the Company's internal control over financial reporting were not effective; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

22.     On August 3, 2017, the Company issued a press release announcing the delay in releasing its second quarter 2017 preliminary results due to an internal investigation as to its accounting practices, stating in part:

> EFI Announces Postponement of Conference Call
>
> August 03, 2017 16:25 ET | Source: Electronics For Imaging, Inc.
>
> FREMONT, Calif., Aug. 03, 2017 (GLOBE NEWSWIRE) -- Electronics For Imaging, Inc. (Nasdaq:EFII), a world leader in customer-focused digital printing innovation, is postponing the conference call at which it anticipated discussing second quarter 2017 preliminary results in order to enable the Company to complete an assessment of the timing of recognition of revenue.  The assessment is related to certain transactions where a customer signed a sales contract for one or more large format printers and was invoiced, and the printer(s) were stored at a third party in-transit warehouse prior to delivery to the end user.
>
> In addition, EFI is in the process of completing an assessment of the effectiveness of EFI's current and historical disclosure controls and internal control over financial reporting.  EFI expects to report a material weakness in internal control over financial reporting related to this matter.  EFI also expects to report that EFI's disclosure controls were not effective in prior periods.
>
> The Company currently expects that the total aggregate revenue for the periods under review will not be materially different from the aggregate revenue that was previously reported for those periods, taking into account any revenue from the prior periods that may be moved into the current or upcoming periods.

9

>The Audit Committee of EFI's Board of Directors is conducting an independent review related to the matter and has retained independent professionals to assist in that review.
>
>A subsequent press release will be issued announcing a new date and time for the distribution of earnings information for the second quarter of 2017.  EFI may be unable to file its Form 10-Q for the second quarter of 2017 on a timely basis.

23. On this news, shares of the Company fell $21.61 per share or over 45% from its previous closing price to close at $26.05 per share on August 4, 2017, damaging investors.

24. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Electronics For Imaging during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be

notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.  Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29.  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   (a)  whether Defendants' acts as alleged violated the federal securities laws;

   (b)  whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

   (c)  whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

   (d)  whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

   (e)  whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

 (f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

 (g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

 (a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

 (b) the omissions and misrepresentations were material;

 (c) the Company's securities are traded in efficient markets;

 (d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

 (e) the Company traded on the NASDAQ, and was covered by multiple analysts;

 (f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the

    true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

32. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

38. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

39. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

40. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

41. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

42. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

43. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

46. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

47. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

48. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which

comprise the primary violations about which Plaintiff and the other members of the Class complain.

49. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 10, 2017	Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff